```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS
```

**DUSTIN LEGLER,**

                     **Plaintiff,**

          v.                           CASE NO. 06-3311-SAC

**LOUIS E. BRUCE, et al.,**

                     **Defendants.**

### O R D E R

      This civil rights complaint, 42 U.S.C. § 1983, was filed by an inmate of the Hutchinson Correctional Facility, Hutchinson, Kansas (HCF). The named defendants are Warden L. Bruce, Aramark manager J. Olson, and health care administrator J. Meyers, all at HCF, and W. Cummings employed at the Kansas Department of Corrections. Plaintiff claims denial of prescribed medication and unhealthy conditions of confinement. He seeks injunctive and declaratory relief requiring defendants to provide him with a certain medication, as well as money damages for the alleged constitutional violations.

      Upon screening the complaint and exhibits submitted by plaintiff, the court found Mr. Legler had not alleged sufficient facts to establish either a sufficiently serious deprivation by, or deliberate indifference on the part of, any named defendant. Plaintiff was given time to show cause why this action should not be dismissed for the reasons set forth in the show cause order. Plaintiff has filed a Response (Doc. 11). Having thoroughly

reconsidered all materials filed by plaintiff together with his Response, the court finds as follows.

**DENIAL OF PRESCRIBED MEDICATION**

In his complaint, Mr. Legler alleged he is not being provided the proper medication for Attention Deficit Disorder (ADD), and he needs Strattera, which was previously "prescribed on the streets." He complained that prison staff replaced Strattera with a generic, which is ineffective and has "bad side effects."

In its show cause order, the court cited the legal standards for stating an Eighth Amendment claim of cruel and unusual punishment based upon the alleged denial of medical treatment. The court found that the complaint together with the exhibits submitted by plaintiff demonstrated medical care and medication have been furnished to plaintiff rather than denied. Plaintiff was advised that a mere difference of opinion between an inmate and prison medical staff regarding what is appropriate or adequate treatment does not itself evince cruel and unusual punishment, but, at most, supports a claim of malpractice. The court also noted plaintiff's allegations that medication he had previously received was replaced with a "generic" to cut costs, even taken as true, fail to state a claim. Plaintiff was given time to show cause why his claim of denial of Strattera and other claims should not be dismissed for failure to state a claim of cruel and unusual proportion.

In his Response, plaintiff repeats his complaint that the

2

prison has provided a generic medicine instead of Strattera, and his assertion that this is not proper treatment. He adds a description of the generic's side effects as "constant groggyness (sic), and being tired all the time, and feeling like a sponge or rubber ball." He also adds that defendant Meyers has stated we have too many people on meds and "Topeka wants us to get them off." He now alleges "the clinic" has failed to investigate his claims and to evaluate him.

As the court previously noted, the decision to prescribe a generic medication to cut costs is entirely appropriate and does not amount to cruel and unusual punishment. Plaintiff has no constitutional right to receive a non-generic medication while in prison. Plaintiff states he "repeatedly reported . . . the side effects" he has now described in his Response. However, he again fails to allege dates, places, and to whom he presented with sufficiently serious side effects and that attention was denied. Plaintiff's statements in his Response, such as he is "not being properly treated," is "being denied meds," the State is "denying prisoners adequate treatments/meds," and "officials intentionally interfere with prescribed treatments," are conclusory. It remains that the only facts plaintiff has alleged are that he was diagnosed with ADD and prescribed Strattera on the street, but has been provided a generic medication which has some side effects while in prison. The court concludes that, taking as true the facts and not the conclusory statements alleged by plaintiff, his claim amounts to a mere difference of opinion with the medical staff at HCF as to

3

the medication prescribed. He does not allege facts showing a denial of medication or treatment for a currently diagnosed condition.

Furthermore, the court finds plaintiff improperly seeks to recover money damages from specific, named individuals on the basis of very general, conclusory claims. Such claims are insufficient to hold these individuals liable for the reason that they fail to show the requisite personal participation of each defendant in the alleged violation of plaintiff's federal constitutional rights.

**CONDITIONS OF CONFINEMENT**

In its prior order, the court also thoroughly discussed the deficiencies in plaintiff's claims regarding conditions at the HCF, including his allegations of smelly, moldy, stained bedding; dirty serving trays and cups; spoiled foods, and an inadequate diet with insufficient amounts of fresh fruits and vegetables. The court noted:

> Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety.

McBride v. Deer, 240 F.3d 1287, 1291 (10th Cir. 2001); Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998); Shannon v. Graves, 257 F.3d 1164, 1168 (10th Cir. 2001). Mr. Legler was specifically advised that in order to state a claim of cruel and unusual punishment based on unsanitary or unsafe conditions, he had to

allege facts showing he is "incarcerated under conditions posing a substantial risk of serious harm;" and that defendants "knew of and disregarded an excessive risk to inmate health or safety." <u>Martinez v. Garden</u>, 430 F.3d 1302, 1304 (10th Cir. 2005).

The court considered and discussed exhibits submitted by plaintiff of his grievances and administrative responses[1]. In support of Mr. Legler's claim regarding linens, he exhibited a grievance he filed complaining of filthy sheets and the responses he received. The court noted the administrative record indicated weekly exchange of normally-used linens, cleaning in accord with health and sanitation policies, and that linens are inspected for wear and discarded when necessary.

In his Response, plaintiff continues to make conclusory allegations such as "filthy and unsanitary practices" do create a severe health risk; he is "routinely" given "nasty" linens; "at some exchanges" the sheets are "outright nasty, dingy yellow, and smell like piss;" and "just because the linens are replaced once a week does not mean they are clean." He does add that "one week" he received a "blood-soaked sheet" which was replaced, and "after that" he received a sheet containing "an active mold/fungus," which he could not use "and it was not exchanged." He also adds that 3

---

[1] Plaintiff's grievances raising the same claims upon which his suit is based together with the responses of prison officials to those grievances constitute the administrative record of the state agency. Plaintiff objects that the court "is trying the case on the grievance responses." The court's consideration of all portions of the administrative record proffered by plaintiff is entirely proper. The court is not obliged to ignore portions that are contrary to plaintiff's conclusory allegations.

to 4 weeks later 15 to 20 new sheets were put in the bedding cart serving 250-280 inmates, and he has never received a new sheet or blanket.  The prison administrative record provided not only that sheets are replaced once a week, but the Warden's finding that they are cleaned in accordance with health and sanitation standards.  Plaintiff does not allege facts as to what is done or not done in the prison laundry process to contradict the agency's findings.

Moreover, plaintiff again fails to allege specific facts showing a federal constitutional violation.  He does not state the date on which he received a blood-soaked sheet, and, in any event, alleges it was exchanged.  He does not allege that he sought an exchange of the sheet containing mold or the date on which this occurred, or name who denied his request for an exchange.  He does not allege that he personally received bedding on a date certain that smelled of urine, that he requested an exchange but was denied, and that a named defendant denied his request.  As previously explained, plaintiff may not recover money damages from the named defendants on the basis of such conclusory allegations.  Furthermore, even accepted as true, the single incident of his receiving and not exchanging a moldy sheet, without more, does not amount to a claim of cruel and unusual punishment.  Plaintiff's general allegations in his Response that inmates live in a dorm-type setting, and that MRSA and other illnesses are a threat are likewise too conclusory to support an Eighth Amendment claim.

The court noted in its prior order that plaintiff's complaints regarding food included a description of only one

6

incident when spoiled meat was allegedly served, and one incident of "nasty lettuce" on a sandwich.  The prison administrative record provided by plaintiff indicated the meat in question was not spoiled, but unseasoned and that after inmates complained it was seasoned and re-served.

In his Response, plaintiff makes additional conclusory allegations of the "ongoing" serving of spoiled food[2] and "daily denial of fruits and vegs."  He adds one incident of allegedly spoiled or bad-smelling chicken being served at supper on May 2, 2007, long after the complaint was filed.  However, he does not allege spoiled chicken was served to him, what facts show the chicken was actually spoiled, that he ate it and became ill, or that he was unable to eat an adequate amount of healthy food if he refused to eat the chicken.  He does not include any other dates or descriptions of incidents seriously suggesting frequency or duration.  On the other hand, the exhibited administrative record indicated kitchen staff will rectify actual health problems with meals if called to their attention, but plaintiff had not sought resolution of such problems at particular meals.  Plaintiff also does not describe even one meal where he requested fruits and

---

[2] Even though plaintiff states in his Response that "there are numerous grievances attached to the complaint regarding aramark serving outdated foods and the nasty conditions of the kitchen," there are only two grievances "on Armark." One is a specific grievance that Aramark ran out of food on September 10, 2006, and took thirty minutes to cook more.  The other is a grievance that on September 9, 2006, plaintiff was served wilted lettuce on his hamburger and his tray was wet.  Neither of these grievances, when reduced to the facts stated therein rather than inflated by plaintiff's conclusory allegations "of being served spoiled foods and deprived of proper meals," amounts to cruel and unusual punishment.  Nor does either describe any kitchen conditions, outdated foods, or spoiled foods.

vegetables when none was offered, and his request was refused by a named defendant. The administrative record also indicates the prison menu is "approved by the State dietitians in Topeka," and has included numerous fresh fruits and vegetables. Plaintiff's conclusory allegations to the contrary are not sufficient. Plaintiff has also not described all foods offered to him over specific dates together with what particular necessary foods were not, and thus how the available food was inadequate to provide an overall balanced diet. Clearly, Mr. Legler's being unable on one day to eat the lettuce on his hamburger does not begin to suggest he was denied an adequate amount of healthy food.

As plaintiff was previously advised, his general complaints about smelly, stained linen; dirty dishes; and inadequate food, at best, suggest negligence rather than a "wanton and obdurate disregard for inmate health and safety." Shannon, 257 F.3d at 1168. The Eighth Amendment "does not mandate comfortable prisons," and conditions imposed may be "restrictive and even harsh." Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981); Barney, 143 F.3d at 1311. Plaintiff still fails to allege facts indicating how any of the challenged conditions have created an "unconstitutionally high exposure to illness or injury," see Barney, 143 F.3d at 1312, FN14; or that he or other named inmates became ill from dinghy linens or food poisoning[3].

---

[3]

As previously noted, plaintiff does not allege that he has suffered any physical injury. See 42 U.S.C. § 1997e(e)("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing

For the foregoing reasons and for the reasons stated in the court's Memorandum and Order dated May 16, 2007, the court finds that plaintiff fails to state facts in support of his claims of cruel and unusual punishment. The court concludes that this action must be dismissed.

Plaintiff remains obligated to pay the remainder of the district court filing fee due herein by continuing to make automatic payments from his inmate trust fund account as provided in 28 U.S.C. § 1915(b)(2).

**IT IS THEREFORE ORDERED** that this action is dismissed and all relief is denied for failure to allege facts in support of a federal constitutional claim.

**IT IS SO ORDERED.**

Dated this 27th day of November, 2007, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge

---

of physical injury."); see also Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 807 (10th Cir. 1999).